UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| CHUKWUNWIKE ODUNUKWE, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 21-cv-10828-ADB |
| | * | |
| TRANS UNION, LLC, EXPERIAN INFORMATION SOLUTIONS, INC., EQUIFAX INFORMATION SERVICES LLC, and VERIZON NEW ENGLAND INC.,[1] | * | |
| | * | |
| Defendants. | * | |

# **MEMORANDUM AND ORDER ON VERIZON NEW ENGLAND INC.'S MOTION TO COMPEL ARBITRATION**

BURROUGHS, D.J.

Plaintiff Chukwunwike Odunukwe alleges that Defendant Verizon New England Inc. ("VNEI") improperly continued to bill him after he canceled his account and that Defendants Trans Union, LLC ("Trans Union"), Experian Information Solutions, Inc. ("Experian"), and Equifax Information Services LLC ("Equifax," and, together with Trans Union and Experian, the "Credit Agencies") inaccurately reported his credit history by penalizing him for failing to pay his post-cancelation bills. See [ECF No. 1-2 at 2–5]. Currently before the Court is VNEI's motion to compel arbitration and to stay the case. [ECF No. 40]. For the reasons set forth below, the motion is GRANTED.

---

[1] Mr. Odunukwe originally sued a different Verizon entity, Verizon Wireless Services, LLC ("VWS"), but, by agreement of the parties, VNEI was substituted as the appropriate party on August 2, 2021. See [ECF No. 38 (stipulation); ECF No. 39 (Order endorsing stipulation)].

## I. BACKGROUND

### A. Factual Background

The Court draws the following facts from Mr. Odunukwe's complaint and the materials filed in connection with VNEI's motion. See Cullinane v. Uber Techs., Inc., 893 F.3d 53, 55 (1st Cir. 2018).

Mr. Odunukwe signed up to receive telephone, television, and internet services from VNEI in June 2016. [ECF No. 1-2 at 3; ECF No. 42 ¶ 4]. After signing up, he received an email confirmation. [ECF No. 42 ¶ 5; ECF No. 42-1]. The email contained a link to the Verizon Fios Terms of Service (the "Terms of Service"), and specifically referenced "the settlement of disputes by arbitration." [ECF No. 42-1 at 4]. The email also stated that if Mr. Odunukwe were dissatisfied with the Terms of Service, he could cancel his order without incurring an early termination fee. [Id.]. With respect to arbitration, the Terms of Service provide, in relevant part:

> **ARBITRATION OR SMALL CLAIMS ACTIONS.**
>
> **WE HOPE TO MAKE YOU A HAPPY CUSTOMER, BUT IF THERE'S AN ISSUE THAT NEEDS TO BE RESOLVED, THIS SECTION OUTLINES WHAT'S EXPECTED OF BOTH OF US.** YOU AND VERIZON BOTH AGREE TO RESOLVE DISPUTES ONLY BY ARBITRATION OR IN SMALL CLAIMS COURT. THERE IS NO JUDGE OR JURY IN ARBITRATION, AND THE PROCEDURES MAY BE DIFFERENT, BUT AN ARBITRATOR CAN AWARD YOU THE SAME DAMAGES AND RELIEF, AND MUST HONOR THE SAME TERMS IN THIS AGREEMENT, AS A COURT WOULD. IF THE LAW ALLOWS FOR AN AWARD OF ATTORNEYS' FEES, AN ARBITRATOR CAN AWARD THEM TOO. WE ALSO BOTH AGREE THAT:
>
> 1. THE FEDERAL ARBITRATION ACT APPLIES TO [the Terms of Service]. EXCEPT FOR SMALL CLAIMS COURT CASES THAT QUALIFY, ANY DISPUTE THAT IN ANY WAY RELATES TO OR ARISES OUT OF [the Terms of Service] OR FROM ANY EQUIPMENT, PRODUCTS AND SERVICES YOU RECEIVE FROM US (OR FROM ANY ADVERTISING FOR ANY SUCH PRODUCTS OR SERVICES) WILL BE RESOLVED BY ONE OR MORE NEUTRAL ARBITRATORS BEFORE THE AMERICAN ARBITRATION ASSOCIATION ("AAA").

[ECF No. 42-2 at 10–11].  In the "General Provisions" section of the Terms of Service, there is additional information about dispute resolution:

> Except as otherwise required by law, you and Verizon agree that the Federal Arbitration Act and the substantive laws of the state of your billing address, without reference to its principles of conflicts of laws, will be applied to govern and construe all of the rights and duties of the parties under [the Terms of Service], except as otherwise required by law or to the extent such state law is pre-empted by applicable federal law, including the rules and regulations of the Federal Communications Commission.  UNLESS YOU AND VERIZON AGREE OTHERWISE, YOU AND VERIZON CONSENT TO THE EXCLUSIVE PERSONAL JURISDICTION OF AND VENUE IN AN ARBITRATION OR SMALL CLAIMS COURT LOCATED IN THE COUNTY OF YOUR BILLING ADDRESS, FOR ANY SUITS OR CAUSES OF ACTION CONNECTED IN ANY WAY TO THE SUBJECT MATTER OF [the Terms of Service].

[Id. at 9].  After receiving the confirmation email with the link to the Terms of Service, Mr. Odunukwe did not cancel his subscription.  See [ECF No. 1-2 at 3; ECF No. 42-3 (bill demonstrating that Mr. Odunukwe obtained services)].

On or about August 11, 2018, Mr. Odunukwe canceled his telephone, television, and internet services and returned his equipment to VNEI.  [ECF No. 1-2 at 3].  He then signed a service contract with one of VNEI's competitors.  [Id.].  Notwithstanding the cancelation, VNEI continued to bill Mr. Odunukwe.  [Id.].  Although he mistakenly paid one bill after canceling, he did not pay any others.  [Id.].  VNEI reported Mr. Odunukwe's non-payment to the Credit Agencies, and his credit score decreased significantly.  [Id.].  Mr. Odunukwe intended to refinance his home at a more favorable interest rate—and spent $495 on an appraisal—but had to abandon his effort to refinance because of his less favorable credit score.  [Id.].  To make matters worse, VNEI sold Mr. Odunukwe's debt to a collection agency, who used aggressive and hostile tactics when attempting to collect.  [Id. at 4].  Additionally, although the Credit Agencies initially removed the account-related delinquencies from Mr. Odunukwe's credit report (after he alerted them to his cancelation), they eventually reinstated them.  [Id.].  Mr. Odunukwe

attempted to resolve his dispute with VNEI amicably by filing a demand letter, but VNEI declined to pay him any money. [Id. at 5].

### B. Procedural Background

Mr. Odunukwe filed suit against VWS and the Credit Agencies in Middlesex County Superior Court on April 18, 2021. [ECF No. 1-2 at 2–6]. In his four-count complaint, he brings claims under 15 U.S.C. §§ 1692e and 1692d (Counts I and II), 15 U.S.C. § 1681e (Count III), and Massachusetts General Laws Chapter 93A (Count IV). [Id. at 3–5]. On May 19, 2021, Trans Union removed the case to this Court. [ECF No. 1]. After all four original defendants filed answers, [ECF No. 16 (Experian); ECF No. 17 (Trans Union); ECF No. 28 (VWS); ECF No. 36 (Equifax)], and VNEI was substituted for VWS, [ECF Nos. 38, 39], VNEI filed the instant motion to compel arbitration and stay the case, [ECF No. 40]. Mr. Odunukwe opposed, [ECF No. 43], and VNEI replied, [ECF No. 46].

## II. LEGAL STANDARD

The Federal Arbitration Act ("FAA") was enacted primarily to "overcome judicial hostility to arbitration agreements," Allied-Bruce Terminix Cos., Inc. v. Dobson, 513 U.S. 265, 272 (1995), and it "embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts." Soto-Fonalledas v. Ritz Carlton San Juan Hotel Spa & Casino, 640 F.3d 471, 474 (1st Cir. 2011) (quoting Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 443 (2006)). Under the FAA, "[a] written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The party seeking to compel arbitration bears the burden of proving "that a valid agreement to arbitrate exists, the movant has a right to enforce it,

the other party is bound by it, and that the claim asserted falls within the scope of the arbitration agreement." Oyola v. Midland Funding, LLC, 295 F. Supp. 3d 14, 16–17 (D. Mass. 2018) (citing Bekele v. Lyft, Inc., 199 F. Supp. 3d 284, 293 (D. Mass. 2016), aff'd, 918 F.3d 181 (1st Cir. 2019)).

III.   DISCUSSION

   A.   **Motion to Compel Arbitration**

VNEI maintains that, pursuant to the arbitration agreement included in the Terms of Service, Mr. Odunukwe must arbitrate his claims against VNEI. [ECF No. 41 at 5–12]. Although Mr. Odunukwe does not contest that he entered into an arbitration agreement with VNEI, see [ECF No. 43 at 3], he makes four arguments as to why he should not be forced to arbitrate. The Court addresses each in turn and finds that none are persuasive.

First, Mr. Odunukwe argues that when he canceled his subscription in 2018, the Terms of Service, including the arbitration agreement, ceased to bind him. [ECF No. 43 at 3–4]. This argument, which is unaccompanied by any citation to authority, fails. The Terms of Service provide that "[a]ll obligations of the parties under [the Terms of Service], which by their nature would continue beyond the termination, cancellation or expiration of [the Terms of Service], shall survive such termination, cancellation or expiration," [ECF No. 42-2 at 9], and Mr. Odunukwe's obligation to arbitrate "any dispute that in any way relates to or arises out of [the Terms of Service] or from any equipment, products and services you receive from us," [id. at 10 (capitalization altered)], is such an obligation.[2] Accordingly, Mr. Odunukwe did not free

---

[2] If the contractual obligation to arbitrate did not survive termination, an agreement to arbitrate would be meaningless because any party seeking to avoid arbitration could simply unilaterally terminate a contract before bringing claims. Additionally, the category of claims covered by the arbitration provision—i.e., "any dispute that in any way relates to or arises out of [the Terms of Service] or from any equipment, products and services you receive from us"—contains no

himself of his contractual obligation to arbitrate by canceling his Verizon services. Cf. Bossé v. New York Life Ins. Co., 992 F.3d 20 (1st Cir. 2021) (enforcing arbitration agreement contained in employment contract even though claims were brought after employment contract was terminated).

Second, Mr. Odunukwe contends that the FAA does not govern the arbitration agreement because he is a Massachusetts resident and VNEI is a Massachusetts company with its principal place of business here.[3] [ECF No. 43 at 4]. This argument also fails. In the Terms of Service, the parties agreed that the FAA applies, [ECF No. 42-2 at 10 ("The [FAA] applies to [the Terms of Service]."); id. at 9 ("Except as otherwise required by law, you and Verizon agree that the [FAA] . . . will be applied to govern and construe all of the rights and duties of the parties under [the Terms of Service] . . . .")], and the Court must enforce the Terms of Service as written. Cf. Dialysis Access Ctr., LLC v. RMS Lifeline, Inc., 932 F.3d 1, 7 (1st Cir. 2019) (noting that parties may structure their arbitration agreements as they wish and that "parties are free to contract around the application of the FAA in favor of state arbitration law"). Moreover, even setting aside those contractual provisions, the FAA would still apply. "[T]he FAA applies to 'a contract evidencing a transaction involving [interstate] commerce.'" Id. (alteration in original) (quoting Ortiz-Espinosa v. BBVA Sec. of P.R., Inc., 852 F.3d 36, 42 (1st Cir. 2017)). Although involving Massachusetts parties, the contract here—which concerns the provision of telephone, internet, and television services—involves (i.e., affects) interstate commerce. See Allied-Bruce

---

limitation as to when claims arise or are brought. Thus, Mr. Odunukwe's obligation to arbitrate claims related to the Terms of Service did not end when he canceled his service.

[3] Although Mr. Odunukwe does not clearly articulate what consequences would follow a finding that the FAA does not apply, he seems to suggest that he could not be compelled to arbitrate his Chapter 93A claim. See [ECF No. 43 at 4].

Terminix Cos., 513 U.S. at 273–74 (noting that a transaction involving interstate commerce is one that affects interstate commerce); Manard v. Knology, Inc., No. 10-cv-00015, 2010 WL 2528320, at *3 (M.D. Ga. June 18, 2010) ("It is clear that the transactions in this case—provision of telecommunications services, including telephone and internet—involve interstate commerce."); cf. T.H. Glennon Co. v. Monday, No. 18-cv-30120, 2020 WL 1270970, at *8 (D. Mass. Mar. 17, 2020) (noting that "the internet is an instrumentality [and channel] of interstate commerce" (quoting United States v. Trotter, 478 F.3d 918, 921 (8th Cir. 2007))).  Thus, the FAA applies.

Third, Mr. Odunukwe asserts that his claims against VNEI do not arise out of the Terms of Service and are therefore not covered by its arbitration clause.  [ECF No. 43 at 4 ("[T]he terms of the Arbitration clause govern disputes that arise out of the [Terms of Service] between the parties, not the continued billing after cancellation and dissemination of untrue credit data on the part of Verizon." (emphasis omitted))].  The language in the arbitration agreement is broad, and Mr. Odunukwe's claims fall within its purview.  Mr. Odunukwe alleges that VNEI continued to bill him after he canceled his services, sent the Credit Agencies inaccurate information after he failed to pay, subjected him to an overly aggressive debt collector, and failed to make him whole despite his demand for recompense.  See [ECF No. 1-2 at 2–5].  These claims relate to (and arise out of) the Terms of Service, pursuant to which Mr. Odunukwe agreed to pay VNEI until his services were canceled, see [ECF No. 42-2 at 4–5].  Where factual disputes regarding whether Mr. Odunukwe's cancelation was valid (and what recourse VNEI was permitted to take in the event of non-payment) will have to be resolved with reference to the Terms of Service, it is clear that Mr. Odunukwe's claims are covered by the arbitration provision.  See Grand Wireless, Inc. v. Verizon Wireless, Inc., 748 F.3d 1, 8 (1st Cir. 2014).

Finally, Mr. Odunukwe maintains that by actively participating in this litigation, VNEI has waived its right to arbitration. [ECF No. 43 at 4–6]. Mr. Odunukwe's argument misses the mark. VNEI has been involved in this case only since August 2, 2021, see [ECF No. 39], and its first substantive filing was its motion to compel arbitration, see [ECF No. 40].[4] Even if the Court were to hold VNEI accountable for VWS's litigation conduct, it would still not find waiver because this litigation is still in its infancy and, before being dismissed, VWS took no action inconsistent with arbitration. See generally FPE Found. v. Cohen, 801 F.3d 25, 29 (1st Cir. 2015) (discussing the waiver analysis). To the contrary, VWS raised the issue of arbitration in its answer, see [ECF No. 28 at 6], and the parties explicitly contemplated a motion to compel arbitration in their joint scheduling statement, see [ECF No. 30 at 1]. Additionally, the fact that Mr. Odunukwe has served discovery requests upon VWS and/or VNEI, see [ECF No. 43 at 4], does not support a waiver finding because VWS and VNEI have no control over Mr. Odunukwe's actions. Finally, Mr. Odunukwe seems to suggest that VNEI has waived its right to arbitrate because its (or VWS's) counsel participated in meet-and-confers with Mr. Odunukwe's attorney. See [id. at 4–5]. This argument is meritless. A litigant intending to assert a right to arbitrate need not shut itself off from the litigation entirely, and unless and until a motion to compel is granted, a party (and its counsel) must comply with mandated meet-and-confer obligations.

In sum, the Court finds that VNEI has met is burden of demonstrating that Mr. Odunukwe is required to arbitrate his claims against VNEI pursuant to the arbitration

---

[4] Further, in the parties' stipulation regarding VNEI's substitution for VWS, VNEI was given fourteen days to respond to Mr. Odunukwe's complaint, see [ECF No. 38 at 2], which demonstrates that Mr. Odunukwe understood (and agreed) that VNEI would be filing a responsive pleading of its own (and would not be simply adopting VWS's answer).

agreement included in the Terms of Service.  Accordingly, VNEI's motion to compel arbitration, [ECF No. 40], is GRANTED.

### B. Motion to Stay

Having granted VNEI's motion to compel arbitration, it is clear that the case must be stayed as to VNEI.  The question is whether a stay of the entire litigation (i.e., against all four defendants) is appropriate.  While VNEI argues that it is, see [ECF No. 41 at 11–12], neither Mr. Odunukwe nor the Credit Agencies have taken a position.  For several reasons, the Court finds that a stay of the entire litigation is warranted here.  First, the text of the FAA, which references a "stay [of] the trial of the *action*," suggests that the entire case should be stayed.  9 U.S.C. § 3 (emphasis added).  Second, courts have found that where claims against defendants not subject to an arbitration agreement are interconnected with claims against defendants that are, even defendants who have no right to arbitrate may be entitled to the benefit of a stay.  See, e.g., Spencer Furniture, Inc. v. Media Arts Grp., Inc., 349 F. Supp. 2d 49, 53–54 (D. Mass. 2003).  Here, Mr. Odunukwe's claims against the Credit Agencies are contingent upon Mr. Odunukwe's claims against VNEI because whether the Credit Agencies disseminated false or misleading credit information regarding Mr. Odunukwe depends, at least in part, upon whether VNEI improperly billed him.  That issue will almost certainly be decided during the arbitration.  Moreover, even if the FAA's stay provision did not apply to the Credit Agencies, the Court would still stay the entire case pursuant to its discretionary authority to manage its docket in the interests of judicial economy.  See Landis v. N. Am. Co., 299 U.S. 248, 254 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."); Microfinancial, Inc. v. Premier Holidays Int'l, Inc., 385 F.3d 72, 77 (1st Cir.

2004) ("It is apodictic that federal courts possess the inherent power to stay proceedings for prudential reasons."). Accordingly, VNEI's motion to stay, [ECF No. 40], is <u>GRANTED</u>.

## IV.    CONCLUSION

For the reasons set forth above, VNEI's motion to compel arbitration and stay the case, [ECF No. 40], is <u>GRANTED</u>. Mr. Odunukwe's claims against VNEI must, in the first instance, be arbitrated, and this case is <u>STAYED</u> pending the completion of that arbitration.

**SO ORDERED.**

October 5, 2021                                                          /s/ Allison D. Burroughs
                                                                                    ALLISON D. BURROUGHS
                                                                                    U.S. DISTRICT JUDGE